*In re* POPPLETON'S ESTATE.

APPEAL OF POPPLETON.

1. NEW TRIAL—WEIGHT OF EVIDENCE.
    The verdict sustaining the validity of a last will and testament of an aged woman of 92 years is held not to be against the weight of the evidence.

2. WILLS — VALIDITY — MOTIVE — UNREASONABLE DISPOSITION OF ESTATE.
    A will which disinherits a daughter who had received from the testator and other sources an equal amount with her brothers, is not an unnatural or unreasonable disposition of the estate.

3. SAME—MOTIVE—UNDUE INFLUENCE—INCOMPETENCY.

It is not error prejudicial to the contestant to instruct the jury that they might find a motive for excluding a daughter from a share in the property of her mother in the fact that the daughter removed property from her mother's home without permission, or in the fact that she used unkind language in an interview with the mother; no motive being necessary to warrant the testatrix in disposing of her property as she might see fit.

4. TRIAL—WILLS—UNDUE INFLUENCE.

Argumentative statements by the trial court to the jury that proponent has no such interest in the will as his brother, who was a beneficiary, accompanied by statements to the effect that proponent had on certain occasions, not shown by the testimony, conducted himself laudably, were prejudicial error upon an issue of undue influence and mental incompetency, where the proponent had been his testator's confidential adviser and had failed to take the stand to rebut the presumption of undue influence.

Error to Oakland; Smith, J. Submitted June 17, 1909. (Docket No. 12.) Decided July 15, 1909.

Herbert A. Poppleton presented for probate the last will and testament of Sarah Poppleton, deceased. The will was allowed in the probate court, and Ella Poppleton appealed to the circuit court. A judgment for proponent is reviewed by contestant on writ of error. Reversed.

*Robert M. Brownson*, for appellant.

*John H. Patterson* and *Beaumont, Smith & Harris*, for appellees.

BLAIR, C. J. Sarah Poppleton died at her home in the village of Birmingham, Oakland county, on June 3, 1907, at the age of 92 years. She left a will, executed March 4, 1891, to which had been added three codicils. By the will testatrix gave one-fourth of her estate to her son, Edgar Poppleton, in trust, to pay the net income thereof to the contestant, her daughter Ella, during her lifetime; the principal, after Ella's death, to go to Edgar

and his brother, Herbert. The remaining three-fourths of her estate she willed to Edgar and Herbert equally.

The first codicil, executed February 5, 1895, reads as follows:

"Up to this date I have given my son Edgar C. that portion of my estate which I wish him to have. What is left he will report faithfully, and that part I wish divided according to the full terms of this will among the other two children. But this is not intended to deprive said son Edgar C. from heirship right, in case of the death of Herbert or Ella."

The second codicil, executed December 26, 1896, provided, in substance, that if Ella or Herbert should contest the will or codicils, or if Ella should attempt to remove the trustee named therein, their share or shares thereunder should be revoked and go to others. December 1, 1904, testatrix executed a third codicil containing the following provisions:

"*First.* I hereby revoke such provisions of my said last will and testament as gives to my daughter, Ella, any share or portion of my property and I hereby leave her nothing by my last will and testament.

"*Second.* All the property which my daughter, Ella, would have been entitled to at my death under the provisions made for her in my said last will and testament, if the same were not hereby revoked, I give and bequeath to my sons, Edgar C. Poppleton and Herbert A. Poppleton, in equal shares.

"*Third.* I have already delivered my securities to Edgar C. Poppleton with instructions to make such a division between himself and my son Herbert A. Poppleton.

"*Fourth.* I request that my said sons pay to my said daughter, Ella, such a sum of money annually as each may deem best, on or about the first of January of each year during her life, but this is a request merely and it is not obligatory upon my said sons nor a condition of this instrument."

At the time of her death testatrix's estate amounted to about $80,000, and was handled, and had been for many years, by Edgar as her confidential adviser and

business agent. Many years before contestant had received, under the will of her aunt, $13,000, which, under her father's management, had increased to $42,000, and after the death of her father was handled for her by her brother Edgar. In September, 1893, Mrs. Poppleton transferred to contestant $5,000 in mortgages, about the character of which transfer a disagreement later arose between Ella and the other members of the family. The facts with reference to this matter will be found sufficiently stated in our opinion in the case of *Poppleton* v. *Poppleton*, 143 Mich. 208 (106 N. W. 703), where we held that the evidence established a gift of the securities themselves as claimed by Ella, and not merely of the interest, as claimed by the other members of the family.

The will and codicils were contested in the probate and circuit courts, on the grounds of mental incompetency of the testatrix, and fraud and undue influence practiced upon her by her son Edgar. The papers were admitted to probate in both courts, and to reverse the judgment of the circuit court contestant prosecutes her writ of error in this court.

The greater portion of contestant's brief is devoted to the discussion of the errors assigned upon the refusal of the trial judge to grant her motion for a new trial, for the reasons: *First*, that the verdict was against the clear weight of the evidence; *second*, that in view of Edgar's confidential relations with testatrix the burden rested upon proponents to show that there was no undue influence exerted, and proponents failed to show, by a preponderance of the evidence, that the codicils were not the result of undue influence.

Our examination of the record has satisfied us that the trial judge did not err in refusing a new trial upon the grounds urged. It would serve no useful purpose, and unduly extend this opinion, to enter upon a discussion of the voluminous testimony. A sufficient motive for the third codicil might well be found in contestant's treatment of her mother, and the methods she adopted to

secure evidence for future use. There was testimony also to the effect that she thought Ella had enough. Mrs. Dane Poppleton testified:

" She frequently spoke to me about her property, and about the way in which she wished it to be divided. She said that what she had left she wished Edgar and Herbert to have. She considered Ella had had enough."

It was not necessary, however, that testatrix should have any motive for making her will as she thought fit, apart from her own desire. The record indicates that if the last codicil stands, contestant will have had about as much as her brothers. Under such circumstances, there was nothing unnatural, or even unreasonable, about her final disposition of her property.

The principal witness as to facts implying undue influence was the contestant herself, whose testimony the jury might have considered seriously impeached by the disappearance from her diary of sentences which she had read therefrom in probate court, and by the appearance of passages therein which did not appear in her testimony in the probate court. She also contradicted herself in important particulars. The preponderance of the evidence is strongly in favor of the mental competency of the testatrix at the time she executed the third codicil; that she was a woman of strong will, and insisted upon having her way, and her changed attitude towards contestant can be reasonably explained by the methods adopted by contestant in endeavoring to secure her property.

The 17th assignment of error challenges the correctness of the following portion of the charge:

" If you believe from the testimony in this case further that Sarah Poppleton was influenced to make the codicil December 1, 1904, by reason of the actions or conduct of her daughter with reference to having the trusteeship removed from her father's estate, or by her actions with reference to obtaining the $5,000 fund, claimed by Sarah Poppleton to have been created for Ella to have the use and interest thereon during her life, or by reason of Ella Poppleton removing things from her mother's house, or

taking the silver away, without her knowledge, or of talking to her mother in such a manner as no daughter should talk to a parent, and leaving her mother agitated and in tears after at least one interview with her, then you may find that these things, or any of them, might be sufficient motive for the making of such a codicil."

Properly interpreted, we find no prejudicial error in this portion of the charge. There is abundant evidence in the wills themselves of both parents, as well as in extraneous testimony, that they regarded the trust provisions thereof as essential, and the efforts of contestant to secure a discharge of the trust provisions might properly be considered by the jury on the question of motive. We do not understand the reference to the $5,000 fund to mean that the bringing of suit by contestant to enforce her just rights would furnish a sufficient reason for disinheriting her, but that the course pursued by contestant in preparing for the bringing of suit might furnish such reason. This is made evident by a preceding portion of the charge, in which the court said:

" I further charge you that this contestant had the right to make such demand upon her brother for the return to her of this property; and, if you find as a matter of fact from the evidence in the case, that at the time of the execution of this last codicil, on December 1, 1904, Edgar C. Poppleton did make use of this demand of the contestant for the return of her property to poison the mind of his mother against her, and that the testatrix came to believe that the claim of the contestant so made was an unjust and unwarrantable claim, and that she acted upon that belief, and that it was the cause of her disinheriting her daughter, then I charge you that was such a mental delusion as would avoid this codicil, and your verdict should be for the contestant as to this codicil."

Counsel for contestant seems to confine the reference to removing things from her mother's house to the furniture removed some months after the making of the third codicil. There was other property taken before that date, which the court may have referred to.

There was testimony to sustain the portion of the charge

covered by the 25th assignment of error, and it was for the jury to find where the preponderance of the evidence was.

The 26th and 27th assignments of error relate to the following portions of the charge:

"Now, I think you will find it impossible, gentlemen, to satisfactorily get at the proofs of these contentions, except by a review of the history of this family. In May, 1887, although it has not been spoken of directly, but still I think nobody will dispute it, that in May, 1887, either Orrin Poppleton, or one of the boys, or all of them, had a store at Birmingham. Finding a burglar in the store at 1 or 2 o'clock in the morning in May, 1887, Edgar Poppleton proceeded to try to capture the burglar. He went to the rear entrance of the store where the burglar had entered, with his revolver in hand, and called to him to come out, and he came out. Instantly on approaching the door he fired at Edgar, without hitting him. Edgar immediately fired and killed the burglar, but the excitement and shock of the encounter resulted in what counsel on both sides say is his total deafness. * * * On February 5, 1895, when the first codicil was made Mrs. Poppleton uses this language—I quote from the codicil verbatim—'Up to this date I have given my son Edgar C. that portion of my estate which I wish him to have.' The language is very brief, you will notice, gentlemen, so that Edgar's share is not now entirely dependent upon this will, but the allowance of the will may strengthen his title to his share, but according to this codicil he has already received it, and received it back prior to 1895. *So that he now has no such interest in this will as his brother Herbert, yet counsel denounces him as bringing about the making of this will.* The petition for the probating of this will, if I recall correctly, was not made by Edgar, but by Herbert. Edgar as her executor contends for the allowance of the will, and he may have some other interest in the estate, I know not how much, but from appearances, gentlemen, of these papers apparently he has no such interest in their allowance as his brother Herbert."

Of these assignments counsel for proponents say in their brief:

"It is respectfully submitted that the charges covered

by these assignments were entirely proper. But whether so or not, the error, if any, was so immaterial and trivial that it could not possibly have influenced the verdict."

We are unable to take the view expressed by counsel. Standing alone, the statement of the court as to the cause of Edgar's deafness, though nowhere mentioned in the testimony, might be of no importance, but when read in connection with the other portion of the charge quoted, its effect might be considerable. The heroic conduct of Edgar as described by the court would naturally inspire sympathy and admiration in the minds of the jurymen, which would not attach to deafness alone occasioned by a more prosaic cause. Considering this in connection with the statement of Edgar's minor interest compared with that of Herbert's "yet counsel denounces him as bringing about the making of this will," we cannot say that the description could have had no prejudicial effect.

In another place the court said:

"By the original will of Sarah Poppleton she [Ella] was given in trust during her lifetime the use of one quarter of the mother's estate; *later the use during life of $5,000 in securities*, being the $5,000 spoken of here. *This she has, as I have stated, succeeded in securing absolutely.*"

If these passages in the charge were not designed to create prejudice against contestant, who submitted herself as a witness, and a friendly regard for Edgar, who did not, nor did Herbert, take the witness stand, they were certainly admirably calculated to create such an impression.

The court charged the jury upon the subject of undue influence—which, in reality, was the important issue before the jury—

"It appears from the testimony in this case that Edgar C. Poppleton, since the death of Orrin Poppleton in March, 1893, had had complete charge of the property and securities of his mother, and that since that time he has acted as her confidential adviser and business agent, and that by the terms of the instruments here presented as the

last will and testament of the testatrix, he and his brother, Herbert, are named as the chief beneficiaries. I, therefore, charge you that in this case the burden of the proof is upon the proponent and his brother, Edgar, to show that there was no undue influence exercised in the execution of each one of the codicils to this will, and also to show full deliberation and freedom to act on the part of the testatrix, and good faith upon the part of Edgar C. Poppleton."

As stated by counsel for proponents in their brief, there is no testimony "indicating any attempted undue influence on the part of Herbert Poppleton." There was testimony tending to show a bitter feeling between contestant and Edgar and that he was the dominating influence in the family. The codicil of 1895 gave to him written evidence of a completed gift, which, if actually made, without such evidence it might have been difficult for him as his mother's confidential agent to establish. The codicil also left it to Edgar to designate the portion of the estate which she had given him, and to report faithfully what was left. The codicil was a part of the will and confirmed Edgar's title to his portion of the estate beyond recall by his mother, while his brother and sister had to take their chances of being subsequently cut off. No excuse is furnished by this record for the failure of Edgar Poppleton to take the stand to repel the presumption which the court told the jury existed, and to show his own good faith. We think it was prejudicial error for the trial judge to argue to the jury that, because of the alleged small interest of Edgar under the codicil of 1895, it was unjust to charge him with exercising undue influence. An impartial jury might believe that the codicil of 1895 was one of the links in the chain of evidence establishing undue influence in the making of the last codicil.

For the errors referred to, the judgment is reversed, and a new trial granted.

GRANT, MONTGOMERY, MCALVAY, and BROOKE, JJ., concurred.